The oral argument must receive 15 minutes. The plaintiff and 15 minutes will be shared by the defendants. Good morning, Your Honors. My name is Troy Dusetta. I represent Rick Slorp for the appellant in this case. Foremost, I'd like to say thank you for the extension to continuance. I was able to attend the funeral. I think this case boils down to one primary question, and that's whether or not the mortgage assignment, was the mortgage assignment lawful for the purpose it was used in the underlying foreclosure case? I think the answer to the question is no. It was used, what it was done, why it was presented, it was used to show ownership rights in the mortgage and note and the foreclosure action in the state court. The note endorsement, there was no note endorsement on the note, so the original party in the note still had the rights to enforce under Article III Ohio law, and the mortgage was in the name of another party as well. So in order for plaintiff in that underlying state foreclosure action to foreclose, it needed to show standing, it needed to show a transfer in the interest. And the way that it purported to do that was by creating this mortgage assignment in order to establish its standing. What we know about the mortgage assignment is that it's problematic. The mortgage assignment was created by the law firm that represented the plaintiff in that foreclosure action. They had one of their paralegals sign it on behalf of a third party that was defunct at the time, that she knew was defunct at the time, to transfer interest in the mortgage to the law firm's client, the plaintiff in the action. Then that mortgage assignment was used to obtain a judgment against my client in the state court foreclosure. This was before my firm got involved. Once my firm got involved, post-judgment we reviewed all the documents. We were able to obtain the FDIC's records, which is publicly available, showing that that entity that was signed on behalf of had dissolved. It was no longer in existence at the time. And also my deposition of the paralegal a couple of years earlier, about a year earlier, when I asked her whether or not she knew the company was out of existence, she admitted she did. So we got involved with the case post-judgment in that state court foreclosure, filed a 60B motion for relief from judgment, and we presented this evidence to the court. The court scheduled a hearing for us to present the evidence, and we subpoenaed the paralegal from the law firm to come in and give testimony. The day before that hearing, the state court judgment is vacated and the case is dismissed. Then we've got the subsequent action, essentially. We've brought over several causes of action to hold the law firm, the bank, the individual, as well as MERS, who she was acting on behalf of, accountable for these things. The damages sought are the attorney's fees that you incurred in the state court action. I appreciate that. And some other damages, but the almost $9,000 figure is the attorney's fees. Is that right?  We've got the attorney's fees. We believe the costs and the fees incurred by the bank in prosecuting the state court foreclosure is charged back to my client's account. We've also got fees, costs, interests that accumulated during this litigation process in state court that my client will be responsible for on the bank side that would not have accumulated if the correct party had been in play. We've also got the tortious actions, the actual act of doing this, and also somewhat the slander due as title. This false mortgage assignment was, in fact, recorded, and it was recorded, it remained recorded when we filed this lawsuit. I don't know. I haven't checked it in the past couple of days to see if it's been released. What we found as part of our investigation at the state court level was that this is actually a practice. We were able to come up with six other instances where this law firm, where this paralegal, acting on behalf of MERS, signed documents on behalf of companies that were actually, factually defunct at the time that these things were signed to basically the law firm's plaintiffs in the foreclosure actions in Franklin County. We cite those in our complaint. We actually go through and— Why does it matter to your client who can foreclose as long as someone can foreclose? I'm struggling with why your client has an interest in this. I mean, obviously your client has an interest if someone tries to foreclose, that the person foreclosing has a right to do it. That part I get, but I'm not sure I understand. I think that's—I mean, I think for a couple of reasons. One, as far as the UCC Article 3 as it pertains to rights to enforce a note, it is my client's obligation to ensure that the person being paid on the note is the actual party that's entitled to enforce a note. So there's a— You have a right to worry about double payment, but that's not happened here. Well, that's the concern that my client would have, would be to, quite frankly, ensure that the party that is enforcing, that is attempting to enforce, has the right to do that. So there's not a— As long as you have a case where no one— there is no possibility of two people trying to get paid for the same debt, I still don't understand what the gripe is. I do think we have that possibility, though. I think it's—what's going to— There's statute of limitations on a contract. This contract's probably 20 years in Ohio. Does my client just sit back and say, well, you guys can go ahead and do whatever you want. We'll wait and see if somebody else forecloses later on and then possibly bring an action. Then what happens if the original party is no longer in existence? How does my client be able to obtain recovery twice? So there's cases we actually cite in the complaint. They're out of Florida. Isn't the short answer that you have standing the minute someone tries to foreclose twice or tries to get double payment? Isn't that when your client's standing arises? In other words, it seems to me you want to be engaged in every little assignment, and I get the idea that paying attention to that makes sense if you have two different people that can foreclose against you and really only one has the right, or if two different people try to collect the mortgage payments and only one has the right. When that happens, I do see a reason for having standing. When that hasn't happened and it's all in the abstract, I'm not sure I understand the injury. Let's assume that. Let's assume that somebody else comes back and sues a second time. Sues again on the same note. Then what does my client do? He has an action against the first party. All we're doing is not waiting for that second action to file. You're saying the first party could have disappeared in the interim. Certainly, yeah. And used up all the money that you had actually paid so that you would have no relief then. Exactly. That's the real concern, and I think that's how we get to now we've got at least damages associated with that first one. There is the function here of what do we do about foreclosure counsel and the bank's robo-signing documents, and what do we do as far as homeowners' representatives or consumer attorneys to stop this practice from happening? We know it's happened multiple occasions in Franklin County because we've uncovered it, we've presented it to the court. Has it happened that people have been collecting two payments? I don't know if there's been actual collection action on two. I can tell you in our complaint, we do cite to at least two instances. They're not Ohio cases, they're Florida cases, but where there is subsequent, there's two actions on the same note within a very short period of time where two lenders are seeking to collect on the same note and the same mortgage. So it is something that has, there are lawsuits that have been filed out there. It hasn't occurred in this particular instance, and I venture to say that's probably because we filed suit shortly after the 60B, shortly after this state court action was vacated. But I don't think my client should have to wait around for the second lawsuit and bear the risk, bear first off the cost associated with defending it, and then also bear the risk that the first party is going to be out of the picture at the point in time where the real party in interest comes around. So this case was decided on a motion to dismiss, right? Correct. And why was the district judge wrong, in your view, on the FDCPA wasn't filed within the statute of limitations, the CSPA isn't triggered by this kind of thing? Those are basic questions that you have to overcome in order to prevail here. The FDCPA deals with one of your statute of limitations. I think we've got a continuing violation as the state court judgment is in place using this basically false document. What's your best case from either this court or the Supreme Court or any other court that it's a continuing violation situation? The best case? Yeah, because the argument would be that really it's hostile work environment situations where the continuing violation doctrine is most commonly used. And what would allow you to use it? I think in this case what's unique about it is that we actually have a judgment premised on this false document. So we are not able to bring a new lawsuit for those actions until that action is vacated because then it would be an improper collateral attack against that judgment. So I've got a catch-22 for me, for my side, because if I waited out until— first off, if they wait it out, they say, oh gosh, we have this false document, we realize it's bad, we need to vacate the judgment, but gee golly, we've got a year coming up next month. Let's wait a month until that one year passes from the filing date then to vacate the judgment and dismiss because at that point in time we'll be past the statute of limitations for the FDCPA. And then on the flip side, I can't bring it within the one year potentially because the judgment is in place, even if I know the document is fraudulent, because again I would then be collateral attacking. Thank you. Thank you. May it please the Court. My name is Rick DeBlasius, and I am here representing the appellees Lerner, Sampson, and Rothfuss in Shelley Hill. We also have before the Court Rosemarie Fiori this morning who is representing the other two appellees, Bank of America, National Association, and MERS. The District Court— How much time are you taking? I understood that we would split the time approximately in half here. Okay, thanks. The very first thing I'd like to do in response to what was just argued is honor Judge Sutton's question about standing. There is no question that the defendant in a foreclosure has the right to come into the foreclosure court and defend and to ask for proof that the proper party is bringing the foreclosure. There's no question about that. That is not this case. In this case, the defendant is suing the law firm and MERS and Bank of America for damages. That's a far different case. This Court has recognized, and I think it's important here, that a mortgage is a contract. And in this particular case, the mortgage grants to the interest in the real estate to MERS, grants the mortgage interest to MERS, acting as a nominee for Countrywide. MERS was given rights in the mortgage. Those rights are contractual. Those rights were granted by the appellant. The rights that were granted to MERS was that MERS could assign the mortgage. MERS did that. This Court has recognized that the grant in the mortgage of power to MERS to assign is a recognizable power and is always upheld. Both Judge Gibbons and Judge Moore have written opinions. Judge Moore's opinion is called Hargrow, H-A-R-G-R-O-W, in which Judge Moore says, We deem the mortgage as creating a right of assignment in MERS, review the exact same language that the mortgage contains here, and under a very similar challenge as to whether MERS could assign, The question isn't whether it can be assigned. The question is whether they can challenge it. So obviously they can challenge if there's a foreclosure action, but let's say they know it's an assignable mortgage. They get information that they're now sending their monthly check to a new place, but for whatever reason they have suspicions that it was an improper assignment, like to a defunct company or something. They're afraid that they're going to get saddled with having to make two payments. So why couldn't they file a deck action and say, Listen, we just want to make sure this was a proper assignment, because if it wasn't, we could be stuck paying twice. Why couldn't they do that? Why wouldn't someone in their situation do that? The reason is, and the courts have been unanimous on this, is that they have no standing to challenge a transfer of the loan. It seems to me that this case is that the plaintiff in this case really does not claim injury from the assignment. He claims injury from having to defend a lawsuit without basis, which is a distinguishing characteristic, isn't it? Well, no, Your Honor, because the lawsuit was brought, and the courts have recognized that the lawsuit is brought because of a default in the payment of the mortgage. No, but that's not before us because he does not allege that he defaulted on the loan in his complaint. You say he did, but it's not in the complaint. And this is, I mean, so we do not, we don't even have an allegation before us that he defaulted on the mortgage. I mean, it's just a statement made by you in your brief, and we don't. I mean, so we can't, our analysis of the case cannot be affected by your statement in the brief since it's not in the complaint. Yes, Your Honor, but I believe that the statement in the brief. And so anything that's predicated on his, all the stuff about his injuries being caused by his default, I mean, far as we're concerned, that's not, we can't make that finding. I understand, Your Honor. It was not our statement that the loan was in default, but it was the plaintiff's in the foreclosure statement that this is a suit upon a promissory note, which is in default. That is a case that is brought because there is a payment default. That payment default can be contested. Well, the record in the state court isn't. I mean, we're looking at the plaintiff's complaint here. That's correct, Your Honor. But it is evident when a foreclosure case is brought that the plaintiff has alleged that there, and the foreclosure complaint is attached to the complaint that's before you. The foreclosure complaint, in the foreclosure complaint, the lender averts that there has been a default in the payment on the mortgage loan. I don't question that. I am saying, though, that I don't know that that allegation by the plaintiff in the foreclosure action enables us to conclude, for purposes of this motion to dismiss, that he was, in fact, in default. Yes, Your Honor. But I will say that this court has already held, in its previous decisions, and the bankruptcy case of Rogin, which was in Ray Cook, this court said, courts have routinely found that a debtor may not challenge an assignment between an asinore and asinee. The assignment is immaterial because neither the debtors nor the trustee are parties to the assignment. They cannot claim to have relied on it. There is no ---- I don't question that. I'm just saying, I think he's saying, I think that that reflects, at least from my perspective, at least an incomplete understanding of what the claim here is. Understood, Judge. Let's look at the FDCPA allegations in the complaint. We had a brief exchange where your opponent says several different things, and his brief says different things, about why the FDCPA is not barred by the one-year statute of limitations. How would you respond? Right. I believe that appellant suggests that the statute of limitations should be stayed because he was incapable of filing this suit while there was a judgment pending. He says it would have been an improper collateral attack on the judgment. That is exactly the opposite of what the case held that he cites. The case that he cites, which was the ExxonMobil case, was a case where the Supreme Court limited the ability to raise a Rucker-Feldman Doctrine case. That is, the Supreme Court said, no, we're not going to say, we're going to say that the only kind of case that bars a collateral attack is one where the district court is being asked to sit as a court of appeals on a state court judgment. This is not that kind of a case. This is a case under the FDCPA for damages. It has nothing to do with the state court judgment. This court or the district court was not being asked to sit as a court of appeals for the state court judgment. In fact, this court had a case before it just about a year ago called Wallace v. Washington Mutual, in which the exact same circumstances that occurred in this case. There was a state court judgment in foreclosure. The defendant sued the lender and the law firm, and this court said that it was perfectly proper for that sort of a case, and this court held that that stated a claim under the FDCPA. So this cause of action is not barred by collateral attack, and therefore the statute of limitations is running. I see that your red light is on. I'm sorry. Unfortunately. Thank you very much. May it please the court. I'm Rosemary Fiore. I'm here on behalf of Bank of America and MERS. I would like to start by refocusing the court on why we are here. My opposing counsel indicated that the only issue before the court is whether the mortgage assignment was lawful for the purpose it was used. That is not the issue before the court. The issue before the court was whether a plausible claim for relief was pled in the district court, and the answer to that is clearly no. There were no allegations that the wrong party filed the foreclosure action. There were no allegations that Mr. Slorp was not in default of his mortgage. There were no allegations of potential double liability that another creditor had sued him or threatened to collect on this debt. So we have to focus on whether the district court properly decided that no plausible claim for relief was pled. And that leads me to I would like to follow up on your question, Your Honor. You raised a good point that, you know, let's make the distinction. He's not claiming damages flowing from the assignment per se. I'm going with what your question says, and correct me if I misstate it. He's claiming damages from a faulty foreclosure action filed against him. But the only reason he claimed the foreclosure action was faulty was because of the assignment. And he claims that the assignment was faulty because of two statements in it that are clearly not false.  Even if you assume they're perfectly true, which I won't comment on, still do not provide a claim for relief even if he was allowed to challenge the assignment, which they're not. The two things that are alleged to be false in the assignment of mortgage are legally incorrect. The first one is whether MERS can assign on behalf of a defunct entity. The mortgage, which is a contract that Slorp signed, clearly says that MERS can assign on behalf of the originating lender its successors and assigns. So it's anticipated in the negotiable instrument and the securing document itself that the originating lender might not be in existence at the time that the mortgage is. But how can you assign something on behalf of an entity that doesn't exist? Yes, Your Honor, that's a good point. The entities do exist, and it's not under- It did exist, but my understanding of the facts, and feel free to correct me, was that his allegation is that the entity did not exist at the time that this woman signed the document on behalf of a defunct entity. Yes, but there was a successor to that entity. But she didn't use that successor's name, right? No, because you can't use the successor's name because it has to be assigned from the originating entity. But there's a specific case, the Kaya case, which is in our brief that addresses these issues clearly. She wasn't authorized to sign on behalf of any of these entities, though, right? Yes, she absolutely was. She wasn't affiliated with them, but she was authorized. She was authorized, and that's also a very important distinction. That's the second point that is legally claimed to be false in the assignment that Hill was authorized to sign. The relevant inquiry is not whether she was employed by MERS or the assigning entities. It's whether she was authorized, and the corporate disclosure- I'm just trying to figure out how this third-party standing thing works in practice. I'm assuming you would agree that you hear about this assignment, and if the underlying mortgage contract doesn't allow for an assignment, you could then file a complaint and say, wait, you just assigned something you're not allowed to assign. That's easy, right? You would agree you could do that. So it's assignable. That's our case. You hear about this assignment, and now you think there's something sketchy about it. I assume you're allowed to file a complaint to make sure that some double payment problem is not going to arise. What I'm guessing, and this is my real question for you, does third-party standing disappear the minute the various defendants say, listen, we all agree there's only one assignment. We all agree that the assignment's fine, and we all agree there is now just one assignee of this thing. And once they say that, the individual, the one that owns the house and has the obligations on the mortgage, no longer has standing. Is that the way you think it works? I'm just curious. It's really informational. I think that this issue was addressed in Livonia by this court. Well, that's why I was reading that, and that's why I'm trying to figure out how you think it works. It's a funny way of thinking about third-party standing. You can sue initially to figure out if things are fine, but once you hear that the defendants all agree there's one proper, there's one assignee, it was a proper assignment, the third-party standing disappears at that point? I think that's true. I think that's a correct statement, but I also think the Sixth Circuit decision in Livonia allows standing to challenge an assignment as a defense to a foreclosure case. Well, right, that's when you've been sued. Yes. When you've been sued, obviously you have injury. Yes, but I don't believe that any court authorizes a plaintiff to initiate a cause of action based on an allegedly faulty assignment of mortgage. Why wouldn't you be allowed to sue to make sure the defendants all agree? That was the whole point of the question. Because there's no injury. Okay, I don't think you understood my question. Maybe I didn't. You've got a case like this. You think there's something sketchy about the assignments. It is assignable, but you're afraid it's going to defunct entities or something. You're afraid you're going to end up being held with the bag and having to pay twice. Everyone agrees that's a reason you have standing, right? I don't think so, because what is the injury there? Just your fear that somewhere down the road you might be sued by the wrong party? That you might be asked to. The people you're paying the monthly mortgage payments to are the wrong people. Oh, you're assuming they're paying. Yes, which I think we have to assume here. Well, it wasn't alleged that he was paying. Stick with me on that set of facts. You're still paying. You're still paying. You're afraid you're paying the wrong person. So you have standing to make sure you're paying the right person, and you're saying your standing disappears the minute the defendants all file something with the court saying, listen, the assignments are proper, we all agree, so-and-so now has it, and then that's the end of it. I think in that case you would, I don't know if it's an issue of standing, but you would not succeed on your claim that you're paying the wrong entity unless you prove that you're actually paying the wrong entity. I was thinking Lavonia was suggesting that's when standing disappears. Once the defendants agree the assignment's been fine and there's only one assignee. I think it could be viewed that way, but I also think that if you have a fear that if your cause of action is that you're paying the wrong party and the defendants prove that you're not, you would not prevail on that claim. I don't know if it would mean that you don't have standing anymore. I think you either have standing to sue on these issues or you don't. But you would lose because all the defendants, because the defendants proved that you are paying the correct entity. I don't think that was the situation in this particular case. Your red light is on. Okay. Thank you very much. Did you save time for rebuttal? Five minutes, Your Honor. Thank you. Judge Sutton, I think that you're correct. You can file a deck action all day long on something like that to ensure that the proper parties are paying the proper parties. I think as far as the note's concerned, I think the statute gives you that right, a presentment right, especially for somebody who's current on the note, within the code itself. If you just have standing, wouldn't you have to plead in your complaint that you're still paying? I don't think so because that's just Why not? I don't understand how you have a double payment problem if you're not paying. That seems pretty funny. Say that again for me. Her point is this double payment problem arises, and the reason you might have an injury is if you're paying someone you think is the wrong entity. But if you don't allege in your complaint, we're paying every month. We are current. We are paying every month, which I suspect was not the case here. I don't understand how you have standing to talk about a double payment problem. There's the payment side of things, and there's also the dollar amount that's owed. So who's going to get the benefit of the outstanding loan? There's over $100,000 worth of money. Who gets that I think would be the question at that point. Not who gets the individual payment, but in the event of some kind of foreclosure or nonpayment. I do want to say one thing is If you're not alleging that you're paying, I just don't get the I don't understand how you can It sounds like the only way around a third-party standing problem here is double payment. That's the only explanation I've seen. If you're not alleging you're paying, I don't understand the injury. That's my question. Well, let's assume that somebody's not paying and a foreclosure is filed. Then it's easy. Then a foreclosure is filed. Then you can challenge whether the person foreclosing has the right to foreclose. I do think that's a different situation than what we've got right now, but I think in that I know. That's the problem. Well, but in that kind of instance, we've got some current action ongoing. Here we've got one that's been actually completed, and we know there was wrongdoing associated with it. So I think that's where the distinction is. I do want to say we don't have all the defendants all in agreement here. We have the defendants in this case in agreement because they've got their hand caught in the cookie jar. What we don't have is the party that really matters here, which is Countrywide Bank FSB. They're not represented in this case. They're not the ones agreeing, yeah, we meant to transfer this over to plaintiff in the state court foreclosure. Of course, the plaintiff in the state court foreclosure wants to say, yeah, we've got everybody involved, but we don't have that original party. I do want to go back to the assignment of mortgage here and the words within it. It says MERS, Mortgage Electronic Registrations, Inc., as nominee for Countrywide Bank FSB. It doesn't say as mortgagee for Countrywide Bank FSB. It's specifically assigning something as a nominee, as an agent. And we run into the agency problems of assigning something on behalf of a defunct energy, which cannot happen. Further, even successors assigned, an agent cannot be an agent for somebody, a future principal. Once that future principal comes into existence, then that principal at that point can say, I've got my agent here, MERS, acting on my behalf. And that's not what happened. Here's what would be a simple solution to this, quite frankly, in a mortgage foreclosure case, is for the plaintiff to come out and say, look, we recognize the original party is defunct. We have the note in the mortgage. We have rights in the note in the mortgage. We don't have our documentation in line. But court, here's the proof that we have to establish that we are the proper party. Please find in our favor and find essentially a transfer under the note in the mortgage. That would be something that would be proper. But we're not seeing that in foreclosure actions. Instead, what we're seeing is exactly what's before the court today. We slap together some paperwork. We look at the county records. Who's the last mortgage assignment to on the county records? Oh, that's not the plaintiff we need to file a foreclosure. So let's go ahead and get our paralegal to sign a mortgage assignment to get our interest over to us as plaintiff so we can foreclose, to our client, the plaintiff, so we can foreclose. But aren't I right that the cases are really good for you on the last point? In other words, once someone forecloses against you, you can make sure all the paperwork works. That's fine. What you can't do is when the defendants all agree who has the assignment, challenge all those interim steps before you have a double payment problem or before you're foreclosed. That's, I thought, the distinction. We don't have other parties. So these defendants can agree all they want, but that's irrelevant. It doesn't matter. The reason why that doesn't matter is because we don't have the originating party. The transfer starts somewhere. In the original party who it's starting with, that we do not have as part of this lawsuit. Why is it so bad to have a rule that says, hey, you have standing, you get to search your interest the day they try to foreclose, then you make sure the ducks are lined up and the person trying to foreclose has a right to do so, or the day you're actually doing something that creates a double payment problem, doing something, being paying potentially the wrong person. I guess I'm still struggling with the risk of injury. I don't think the cases are as favorable for consumers as maybe they once were, especially after Livonia Holdings. Livonia Holdings has been just annihilated by the state courts, reading that case to mean there is no chance whatsoever that a homeowner can come in and challenge a mortgage assignment. I mean, a ham sandwich could sign a mortgage assignment and crayon on the back of a napkin in some cases, and that's good enough in order for the banks to foreclose. The Gray case out of the 10th District is a good example of it. That was a case I was involved with. The court came out and said, you cannot challenge mortgage assignments, period, end of story. So I think from even a defensive standpoint, that kind of action. So there has to be some mechanism to hold the banks accountable. I think that's what we're trying to do here. Thank you. Thank you. Thank you all for your argument. The case will be submitted. Would the clerk call the next case, please?